## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PATRICIA L. OGLETREE,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:16-cv-01858-WSD-AJB** |
| **v.** | : | |
| | : | |
| **EDWARD "BEAU" NECCO;** | : | |
| **BOB CARPENTER;** | : | |
| **ENA** *d/b/a* **NECCO; and** | : | |
| **CARVAKA, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

This matter is presently before the Court on an amended motion to dismiss filed by Defendants Edward "Beau" Necco ("Necco"); Bob Carpenter ("Carpenter"); ENA, d/b/a NECCO ("ENA"); and Carvaka, Inc. ("Carvaka"). [Doc. 5]. For the reasons set forth herein, the undersigned **RECOMMENDS** that the District Judge **GRANT** the motion and **DISMISS** the complaint in its entirety.

## I.      Facts and Procedural History[1]

On or about July 27, 2009, Plaintiff Patricia Ogletree was hired by ENA as an Administrative Assistant and Georgia Billing Specialist in Macon, Georgia. [Doc. 1 ¶ 25].  ENA is a not-for-profit company that provides therapeutic foster care, independent living, intensive home-based treatment, mental-health treatment, community living, and alternatives to secure detention.  [*Id*. ¶ 7].  Carvaka is a for-profit entity that provides management and administrative services, human-resource services, and technology and consulting services to ENA.  [*Id*. ¶¶ 11, 13].  During the time period relevant to this lawsuit, Necco was ENA's Chief Executive Officer and Carpenter was ENA's Chief Operating Officer, and they were both based in Ohio. [*Id*. ¶¶ 15, 17, 18, 21].  Necco and Carpenter both held significant shares of both ENA and Carvaka.  [*Id*. ¶¶ 15, 16, 20, 22].

In her job, Plaintiff handled all of the invoice billing for the Department of Family and Children's Services and the Department of Juvenile Justice, and she had

---

[1]      The Court generally presumes for the purposes of this Report and Recommendation that the complaint's factual allegations are true.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) (providing that "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true when it considers a motion to dismiss a complaint under Rule 12(b)(6)").

2

certain communications responsibilities.  [*Id.* ¶ 5].  She was also required to attend certain after-hours business meetings and dinners, out-of-town "morale boosting" gatherings, and training events where Necco and Carpenter were present.  [*Id.* ¶ 6].

Plaintiff felt that Necco and Carpenter sexually harassed her and subjected her to a hostile work environment.  [*Id.* ¶¶ 27, 37, 44].  Necco and Carpenter would ask female employees about their sex lives and make comments about the female employees' body parts.  [*Id.* ¶¶ 32-33].  Necco's language was "replete" with profanity during business meetings, conferences, teleconferences, and training sessions. [*Id.* ¶ 34].  Carpenter "routinely" used profanity in e-mails to staff.  [*Id.* ¶ 36].

On several occasions during visits to the Georgia offices, Carpenter made inappropriate comments to Plaintiff, such as asking about her sex life and asking whether she was "getting enough" lately.  [*Id.* ¶ 45].  On an occasion taking place in or around November 2012, Carpenter kissed her on the cheek and hugged her so hard that he picked her up off the floor.  [*Id.* ¶¶ 46-47].

At the 2012 Christmas party, which was held on December 1, 2012, Necco became intoxicated to the point of almost falling down.  [*Id.* ¶¶ 38-39; Doc. 12 at 16; Doc. 12-1 ¶ 4].  He told Plaintiff that she looked young and beautiful, told her that her lips were sexy, commented on her jaw line, and invaded her personal space several

3

times as he made the comments. [Doc. 1 ¶¶ 40-41]. He also propositioned Plaintiff for sex. [*Id*. ¶ 38]. Plaintiff then heard Necco say to another employee, "We are going to fuck like rabbits." [*Id*. ¶ 42].

In March 2013, Carpenter participated in an e-mail chain that appears to have been sent to all ENA staff. [*Id*. ¶ 35]. The subject of the e-mail chain was "Poop." [*Id*.]. In the e-mail chain, Carpenter wrote, "One of the funniest things I ever witnessed was sean davis [sic] shitting his pants in the Lexington parking lot." [*Id*.].

Sometime in May 2013, Plaintiff went to Atlanta to talk to an officer of the Equal Employment Opportunity Commission ("EEOC") about her discomfort with her treatment. [Doc. 12-1 ¶ 7].[2] The officer told Plaintiff that Plaintiff would need to

---

[2]       When considering a motion to dismiss, a district court generally limits its review to the pleadings and any attached exhibits. *Brady v. Postmaster Gen. U.S. Postal Serv.*, 521 Fed. Appx. 914, 915-16 (11th Cir. June 11, 2013) (per curiam) (citing *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005)). "In addition, a court must consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Brady*, 521 Fed. Appx. at 916 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (providing that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, the court may consider such a document, so long as it is central to the plaintiff's claims); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1990) (holding that a court may also take judicial notice of public records not attached to the complaint). A district court may also consider a document attached to a motion to dismiss without converting the motion into a motion

4

notify Necco, Carpenter, and the Human Resources home office (hereinafter, "HR") in writing about the offensive conduct and her discomfort.  [*Id*.].  He also told her that it was likely she would be fired within about a week of providing the notice.  [*Id*.].

The advice she received from the EEOC made Plaintiff afraid to file the charge until after she left the company.  [*Id*. ¶ 10].  As a result, Plaintiff gave a statement on an intake form, but she did not file a charge that day.  [*Id*. ¶ 9].  The EEOC officer did not tell her that she would lose her right to sue if she did not file her EEOC charge by a certain date.  [*Id*. ¶ 10].

On or about June 24, 2013, Plaintiff resigned from her position with ENA.  [Doc. 1 ¶ 26].  She contacted the EEOC to file her charge of discrimination

_____

for summary judgment where the document is central to the plaintiff's claim and its authenticity is not challenged.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Bryant*, 187 F.3d at 1280. Moreover, where, as here, the Rule 12(b) motion to dismiss is grounded in the plaintiff's alleged failure to exhaust administrative remedies, " 'it is proper for a judge to consider facts outside of the pleadings to resolve factual disputes as long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.' "  *Brady*, 521 Fed. Appx. at 916 (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).  In this case, both parties have submitted evidence regarding Plaintiff's administrative complaints and have had the opportunity to respond to one another's filings and proffers.  [*See* Docs. 5, 12, 13].  The undersigned will therefore consider the evidence in ruling on the exhaustion issue without converting the motion to one for summary judgment.

5

approximately six months later.[3]  [Doc. 12-1 ¶ 11].  On December 13, 2013, the EEOC issued ENA a Notice of Charge of Discrimination, which stated that Plaintiff was filing a charge on her own behalf, she was alleging sex discrimination and retaliation, and a signed copy of the charge would be mailed in approximately forty-five days. [Doc. 5-1 at 1].  On August 22, 2014, the EEOC forwarded to ENA a copy of Plaintiff's charge, which was dated August 8, 2014, and was stamped as having been received by the EEOC on August 18, 2014.  [*Id.* at 5].

The charge alleged sex discrimination and retaliation against ENA.[4]  [*Id.*].  The particulars of the charge were as follows:

> I.   I was hired by the above named employer on July 27, 2009, as an Administrative Assistant.  During my employment I was subjected to sexual harassment by Bob Carpenter, Chief Operative Officer.  On several occasions he questioned me about my sex life asking if

---

[3]      Plaintiff states in an affidavit that she filed her charge of discrimination in December 2012.  [Doc. 12-1 ¶ 11].  She did not attach a copy of her charge, however, (*see* Dkt.), and in her complaint and her affidavit, she describes events that allegedly took place during her employment but that occurred after December 2012.  [*See, e.g.*, Doc. 1 ¶ 35; Doc. 12-1 ¶¶ 3, 7].  Additionally, Defendant presents uncontested documentary evidence that the EEOC issued a Notice of Charge of Discrimination to ENA on December 13, 2013.  [Doc. 5-1 at 1].  It therefore appears that Plaintiff's assertion that she contacted the EEOC to file her charge in December 2012 was a scrivener's error and that the activity did not take place until December 2013.

[4]      The EEOC assigned the matter Charge No. 410-2014-01100. [Doc. 5-1 at 1, 5].

6

> I was, "getting any."  Mr. Necco, Chief Executive Officer, openly discussed degrading and sexualized topics which caused me undue stress and made me feel uncomfortable.  On June 24, 2013 I submitted my resignation letter due to the inability to tolerate language and behavior displayed by senior management.
>
> II.  I believe I was discriminated because of my sex (female) and retaliated against for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[*Id*.].

Plaintiff, proceeding through counsel, initiated this matter by complaint on June 7, 2016.  [Doc. 1].  She stated that the action was "authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. (hereinafter 'Title VII') to correct unlawful employment practices on the basis of sex discrimination and to seek appropriate relief to the Plaintiff, Patricia L. Ogletree[,] who seeks declaratory and injunctive relief, back pay, front pay, and compensatory damages and redress for intentional infliction of emotional distress." [Doc. 1 ¶ 1].  Plaintiff contends that she was sexually harassed, subjected to a hostile work environment, and constructively discharged.  [*Id*. ¶¶ 26, 27, 29].

On June 29, 2016, Defendants filed a motion to dismiss the complaint.  [Doc. 4]. The following day, Defendants amended the motion to dismiss to clarify that the motion was filed on behalf of all four defendants.  [Doc. 5].  After receiving two

7

extensions of time, Plaintiff filed a response to Defendants' amended motion to dismiss on August 22, 2016. [Doc. 12]. Defendants filed a reply brief on September 2, 2016. [Doc. 13]. With briefing complete, the Court now considers the amended motion.

## II.    *Abandoned Claims*

In the amended motion to dismiss, Defendants argue, among other things, that the Title VII claims against Necco and Carpenter are barred because there is no individual liability under Title VII; that the Title VII claims against Necco, Carpenter, and Carvaka are barred because none of those defendants had been named as a respondent in the charge of discrimination Plaintiff filed with the EEOC; and that any claim of intentional infliction of emotional distress is time-barred and barred by the "exclusive remedy" provisions of Georgia's Workers' Compensation Act. [Doc. 5 at 2, 11-20]. In response, Plaintiff concedes that the Title VII claims against Necco and Carpenter, as individuals, should be dismissed; concedes that the Title VII claims against Carvaka should be dismissed; and states that she "did not claim intentional infliction of emotional distress in her Complaint." [Doc. 12 at 1-2, 19-20].

Based on Plaintiff's concessions, it is clear that Plaintiff has abandoned her Title VII claims against Carvaka; her Title VII claims against Necco and Carpenter in their individual capacities; and any claim for intentional infliction of emotional distress

that her complaint could have been construed to assert.  [*Id*.].  The only claims remaining would therefore be the Title VII claims Plaintiff asserts against ENA and against Necco and Carpenter in their official capacities.  [*Compare id. with* Doc. 1 ¶ 1].

A claim asserted against a supervisory employee in his official capacity is redundant with a claim against the employer.  *See Cook v. Randolph Cnty.*, 573 F.3d 1143, 1149 (11th Cir. 2009) (affirming dismissal of official-capacity claims asserted under 42 U.S.C. § 1983 where "functionally equivalent" claims remained pending against the employer); *Wheeles v. Nelson's Elec. Motor Servs.*, 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008) (holding that plaintiff's Title VII and ADEA claims against individual defendants in their official capacities were redundant and due to be dismissed because employer was also named as defendant); *Cleveland v. KFC Nat'l Mgmt. Co.*, 948 F. Supp. 62, 66 (N.D. Ga. 1996) ("Where the employer has been sued directly, . . . the naming of individual employees in their official capacity is unnecessary and duplicative.").  Any claim asserted against Necco or Carpenter in his official capacity is therefore redundant with a claim against ENA and thus is due to be dismissed.

For these reasons, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss the Title VII claims asserted against Necco,

AO 72A
(Rev.8/8
2)

Carpenter, and Carvaka; **GRANT** Defendants' motion to dismiss any claims for intentional infliction of emotional distress the complaint may be construed to assert; and **DISMISS** Necco, Carpenter, and Carvaka from this lawsuit.[5]

---

[5]    Although neither party addresses the issue, the Court notes that the complaint also refers to 42 U.S.C. § 1983. [Doc. 1 ¶ 1].  To succeed on a claim for relief under § 1983, the plaintiff must show that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The "under-color-of-state-law" element excludes "merely private conduct, no matter how discriminatory or wrongful."  *Id*. at 50 (internal quotation marks omitted).  Thus, for a private party to be held liable under § 1983, it must be shown that the defendant's alleged actions "are fairly attributable to the State," including a showing that "the party charged with the deprivation . . . may fairly be said to be a state actor."  *Harvey v. Harvey*, 949 F.2d 1127, 1130-31 (11th Cir. 1992) (internal quotation marks omitted) (explaining that an otherwise private person or entity may be considered a "state actor" under certain rare circumstances: where the private actor is given powers that are traditionally the exclusive prerogative of the state, is compelled by the state to undertake the complained-of conduct, or is so interdependent with the government as to be considered its joint participant in the conduct).  Here, there is nothing in the complaint to suggest that any of the named defendants could be considered a "state actor" within the context of § 1983.  [*See* Doc. 1, *passim*]. Consequently, to the extent that Plaintiff's complaint could be construed as asserting any claims under § 1983, the undersigned **RECOMMENDS** that those claims also be **DISMISSED**.

10

### III.   Title VII Claims Asserted Against ENA

As noted above, Plaintiff asserts claims against ENA for sexual harassment, hostile work environment, and constructive discharge.   [Doc. 1 ¶¶ 26, 27, 29]. Defendants contend that the claims are due to be dismissed because Plaintiff's charge of discrimination was untimely and because she cannot establish a *prima facie* case of sexual harassment/hostile work environment or constructive discharge. [Doc. 5 at 2, 5-11].   The undersigned first considers the timeliness argument and then turns to the question of whether Plaintiff has pleaded facts sufficient to establish a *prima facie* case of discrimination.

#### A.   Legal Standard

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).   While a complaint need not contain detailed

AO 72A
(Rev.8/8
2)

factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). The court also may dismiss a claim pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.    *Timeliness of Charge of Discrimination*

Normally, before a plaintiff may file a Title VII action, she must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *Sanchez v. Standard Brands, Inc.*,

AO 72A
(Rev.8/8
2)

431 F.2d 455, 460 (5th Cir. 1970).[6]  The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  A charge of discrimination is timely in a non-deferral state such as Georgia when it is filed within 180 days of the last discriminatory act.  *Wilkerson*, 270 F.3d at 1317; *see also* 42 U.S.C. § 2000e-5(e)(1).

ENA argues that Plaintiff's claims are subject to dismissal on timeliness grounds because the complaint does not contain any specific allegations of sexual harassment occurring later than December 2012, [Doc. 1 ¶¶ 38-42, 46-47], yet Plaintiff did not file her charge of discrimination until approximately December 13, 2013, [Doc. 5-1 at 1]. [Doc. 5 at 10-11 & n.3].  ENA also points out that even if the March 2013 e-mail described in the complaint were considered to be capable of giving rise to a sexual-harassment claim, it is also separated from Plaintiff's EEOC charge by more than 180 days.  [*Id.* at n.4].

---

[6]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

13

In response, Plaintiff concedes that "[t]he last egregious act of harassment detailed in her Complaint was on December 1, 2012 when she was propositioned by [Necco] . . . and when [Necco] repeated this to her manager,"[7] [Doc. 12 at 16 [citing Doc. 1 ¶¶ 38, 42]]; that she did not file a charge of discrimination when she visited the EEOC office in May 2013, [Doc. 12 at 17; Doc. 12-1 ¶¶ 9-10]; and that it was at least December 12, 2013, before she filed her charge, [Doc. 12 at 19].  Plaintiff argues, however, that equitable tolling should apply because the EEOC officer "misled" her in May 2013, by telling her that she needed to notify Defendants of her allegations prior to filing her charge, telling her that she would likely be fired within a week of providing the notice, failing to notify her that such retaliation would also be actionable, and failing to notify her of the impending filing deadline, all of which caused her to fail to timely file a charge.  [*Id*. at 15-18].  She also appears to suggest that it was reasonable for her not to have filed her charge before December 12, 2013, because she was proceeding *pro se* during her May 2013 visit to the EEOC; because, "[a]s a mother of two children, she got busy with family responsibilities and it was difficult for her to make the trip until December"; and because, despite the lateness of her charge, the

---

[7]     The Court notes that in making this concession, Plaintiff also implicitly concedes that the March 2013 e-mail discussing defecation was not a basis for her claims.

14

EEOC mediated her claim and issued her a notice of right to sue in March 2016. [*Id.* at 16, 19].  Plaintiff also argues in the alternative that an intake questionnaire she completed in May 2013 set forth sufficient information and therefore should constitute a timely charge of discrimination for the purposes of Title VII.  [*Id.* at 18-19 (citing *Wilkerson*, 270 F.3d at 1321, for the principle that a verified intake questionnaire may constitute a charge for purposes of the Title VII statute of limitations when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC)].

Exhaustion of administrative remedies is a matter that is appropriately raised in a motion to dismiss asserted pursuant to Rule 12(b).  *Tillery v. U.S. Dep't of Homeland Sec.*, 402 Fed. Appx. 421, 424 (11th Cir. Oct. 22, 2010) (per curiam); *Bryant*, 530 F.3d at 1374-75; *Goodridge v. Astrue*, Civ. Action No. 1:07-CV-1919-RLV-RGV, 2008 WL 8691093, at *3 (N.D. Ga. Mar. 20, 2008) (Vineyard, M.J.) (determining that a motion to dismiss based upon failure to exhaust administrative remedies must be evaluated under Rule 12(b)(6) for failure to state a claim rather than Rule 12(b)(1) for lack of subject matter jurisdiction).  Where a defendant has specifically and with particularity raised the exhaustion issue in a motion to dismiss, the plaintiff bears the

burden of proving that the conditions precedent to suit have been satisfied. *Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1253 (N.D. Ga. 2014) (Batten, J.); *Goodridge*, 2008 WL 8691093 at \*3; *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (holding that once the defendant pleads and proves failure to exhaust, the plaintiff bears the burden of pleading and proving facts supporting equitable avoidance of the defense).

Procedural requirements attendant to exhaustion are subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982) (holding that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Ross v. Buckeye Cellulose Corp*., 980 F.2d 648, 660 (11th Cir. 1993) (quoting *Zipes*, 445 U.S. at 393). The Eleventh Circuit has recognized three situations in which the Title VII limitation periods may be equitably tolled:

> (1) during the pendency of an action against the same parties and involving the same cause of action in a state court which had jurisdiction over the subject matter of the suit but was the wrong forum under state law; (2) when the defendant concealed facts that support the plaintiff's cause of action, until such time as the plaintiff knew or should have known of these facts; and (3) when the EEOC misleads a complainant about the nature of his rights under Title VII.

16

*Jones v. Wynne*, 266 Fed. Appx. 903, 906 (11th Cir. Feb. 27, 2008) (citing *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302-03 (5th Cir. 1979)).

The Court has carefully considered Plaintiff's arguments but does not find any of them persuasive. First, at the most basic level, Plaintiff has not shown that even if she had filed a charge of discrimination (or an intake form that could have served as a charge) on the day she first visited the EEOC, that charge would have been timely. The complaint contains no allegation of sexually charged conduct taking place after the 2012 Christmas party.[8]  [*See* Doc. 1].  Plaintiff concedes in her brief that this last occurrence took place on December 1, 2012. [Doc. 12 at 16]. The 180-day period for filing her charge of discrimination with the EEOC therefore would have ended on Thursday, May 30, 2013. Plaintiff states both in her brief and in her affidavit that she visited the EEOC office in May 2013, [Doc. 12 at 16; Doc. 12-1 ¶ 7], but nowhere in any of the filings has the Court found an allegation stating exactly on which of May's

---

[8]    The Court notes that in the affidavit she attached to her response to Defendants' motion to dismiss, Plaintiff states that the occasion where Carpenter kissed her on the cheek and hugged her so hard he lifted her off the floor took place in or around March or April 2013. [Doc. 12-1 ¶ 3]. Because this alleged date conflicts with the date alleged in the complaint, [*compare id. with* Doc. 1 ¶¶ 46-47], and Plaintiff's assertion in her brief that the latest conduct giving rise to her Title VII claims occurred on December 1, 2012, [*compare* Doc. 12-1 ¶ 3 *with* Doc. 12 at 16], and because Plaintiff has not made any attempt to amend the complaint, (*see* Dkt.), it appears that the date asserted in the affidavit reflects yet another scrivener's error.

17

*thirty-one* days Plaintiff first visited the EEOC.  Similarly, while Plaintiff stated in her affidavit that she "g[a]ve a complete statement on an Intake Form and signed it as . . . requested," [Doc. 12-1 ¶ 9], the Court's review of the filings has not revealed any allegation or showing that Plaintiff in fact *submitted* the form to the EEOC that day.  Consequently, the Court finds that Plaintiff has not borne the burden of proof of showing that she submitted anything to the EEOC—or even visited the EEOC—prior to the 180-day deadline.

Second, Plaintiff has not shown that even if her intake questionnaire had been filed within 180 days of the date the last allegedly discriminatory act took place, it would have constituted a charge of discrimination for the purposes of Title VII.  As a general matter, an intake questionnaire is not intended to function as a Title VII charge of discrimination.  *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305-06 (11th Cir. 2001).  Nevertheless, Plaintiff is correct in stating that a verified intake questionnaire may constitute a charge of discrimination for the purposes of the Title VII statute of limitations when the questionnaire includes sufficient information and the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process by filing the intake questionnaire with the EEOC.  *See Wilkerson*, 270 F.3d at 1318-20 (holding that

18

plaintiff's intake questionnaire constituted a charge of discrimination, but noting that "we will not treat intake questionnaires willy-nilly as charges").  The Eleventh Circuit has held that a document filed with the EEOC may constitute a Title VII charge if: (1) the document is signed, in writing, and verified;[9] (2) the document contains the information required by the EEOC's regulations;[10] and (3) "the circumstances of [the] case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC." *See id.* at 1318-20.  To make this determination, the Court may consider facts such as (1) the communication between the EEOC and Plaintiff; (2) the questionnaire itself; and (3) the EEOC's response to the completed questionnaire.  *See id.* at 1320.

Here, there is no way to determine whether the intake questionnaire Plaintiff claims to have completed contained the information required by the EEOC's regulations.  It does not appear that a copy of any such questionnaire appears in the

---

[9]     A document is verified when it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. § 1601.3(a).

[10]     The regulations require the charge to be a written statement that (1) is sufficiently precise to identify the parties, and (2) describes the actions or practices complained of.  29 C.F.R. § 1601.12(b).

19

record presently before the Court, and Plaintiff simply states that she "provided all the information requested by the regulations she knew."[11]   [Doc. 12 at 18; *see also* Doc. 12-1 ¶ 9 (asserting that Plaintiff "g[a]ve a complete statement on an Intake Form")].   It is therefore impossible to determine whether Plaintiff's response to the questionnaire was sufficiently precise to identify the parties or describe the actions about which she complains.   Additionally, while Plaintiff states that she signed the intake form, she does not state whether it was verified, [Doc. 12-1 ¶ 9], although this is not necessarily fatal to an otherwise valid charge of discrimination, given Plaintiff's subsequent verified charge filed on August 8, 2014, [*see* Doc. 5-1 at 5].   *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 108-09 (2002) (permitting an "otherwise timely filer to verify a [Title VII] charge after the time for filing has expired").

There is also no basis for a determination that the circumstances of this case would convince a reasonable person that Plaintiff manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC.   On the

---

[11]      The Court notes that Plaintiff also asserts that she was at the EEOC office "for more than 3 hours waiting to meet with an EEOC officer, meeting with the officer and describing the harassment at her company and filling out the Intake Questionnaire." [Doc. 12 at 18].   It is unclear from this statement, however, exactly what Plaintiff described to the EEOC and whether her description of the harassment was oral or was included in writing as part of the questionnaire.

20

contrary, Plaintiff states unequivocally in her affidavit that she did not file an EEOC charge on her first visit to the EEOC and that she was afraid to file her charge until after she left the company.  [Doc. 12-1 ¶¶ 9-10].  It therefore follows that Plaintiff did not have or manifest intent to file a charge of discrimination prior to her resignation taking place on June 24, 2013.  [*See id.*; Doc. 1 ¶ 26; Doc. 5-1 at 5].

Third, Plaintiff has not shown that equitable tolling should apply to excuse the out-of-time EEOC charge she did file.  "Equitable tolling is an extraordinary remedy which should be extended only sparingly."  *Bost v. Fed. Express Corp*., 372 F.3d 1233, 1242 (11th Cir. 2004) (internal quotation marks omitted).  The plaintiff has the burden of establishing the grounds for equitable tolling. *Id*.  "Equitable tolling is inappropriate when a plaintiff . . . failed to act with due diligence."  *Id*.; *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that tolling appropriate when plaintiff establishes filing untimely due to "extraordinary circumstances that are both beyond his control and unavoidable even with diligence").

For the purpose of adjudicating Defendants' motion to dismiss, the Court presumes that the EEOC officer misled Plaintiff about the nature of her rights under Title VII by telling her that she would have to provide written notice to Necco, Carpenter, and ENA's HR department regarding her complaints and that she would

21

likely be fired within a week of doing so. [*See* Doc. 12-1 ¶¶ 7-10]. For these purposes, the Court also accepts as true Plaintiff's allegations that the EEOC officer's advice dissuaded her from filing her charge in May 2013 and that the EEOC officer did not inform her that the filing period was running short or that she needed to file her EEOC charge by a certain date or she would lose her right to sue. [*Id.* ¶ 10]. Plaintiff does not, however, point to any authority establishing that an EEOC officer is obligated to inform a potential claimant of administrative deadlines—even if the potential claimant is proceeding *pro se*—nor is the Court aware of any such authority. Plaintiff also makes no allegation that the EEOC officer affirmatively misstated the deadline, in any way led her to believe that there was no deadline, or in any other way may have dissuaded Plaintiff from performing her own due diligence. Likewise, while the Court recognizes and can certainly accept Plaintiff's representation that "managing . . . family responsibilities [is] a big deal" and often causes other responsibilities to receive less priority, [*id.* ¶ 11], the Court finds nothing "extraordinary" in Plaintiff's alleged circumstances that might justify equitable tolling that would, in effect, more than double the limitations period. *Cf. Brown v. John Deere Prod., Inc.*, No. CV 110-107, 2010 WL 4180721, at *1 (S.D. Ga. Oct. 20, 2010) ("Plaintiff's circumstances, which involve her personal life and difficulty hiring an attorney, clearly have nothing to do

22

with any wrongful behavior by the defendants attempting to block Plaintiff's access to information."), *aff'd*, 460 Fed. Appx. 908 (11th Cir. Mar. 16, 2012).

For all of these reasons, the undersigned finds that Plaintiff has failed to show that she timely filed a charge of discrimination or that the deadline should be equitably tolled.  Consequently, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** the motion to dismiss Plaintiff's Title VII claims for failure to timely file a charge of discrimination.

### C.     Prima Facie *Case of Sexual Harassment or Hostile Work Environment*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Although Title VII does not mention "harassment," the phrase "terms, conditions, or privileges of employment" is interpreted to encompass "the entire spectrum of disparate treatment" of protected classes in employment, "which includes requiring people to work in a discriminatorily hostile or abusive environment." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc).

23

To state a plausible claim for hostile work environment or harassment under Title VII, a plaintiff must, among other things, plead facts showing that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To establish that conduct is sufficiently severe or pervasive to alter the terms and conditions of employment, the plaintiff must establish both subjective and objective components. *Miller*, 277 F.3d at 1276. The subjective component is met when "the complaining employee perceived [the conduct] to be [severe or pervasive] at the time" of the harassment. *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004). In evaluating the objective component, a court examines whether the actions of the employer altered the employee's working conditions to such an extent that a reasonable person would find the atmosphere hostile and abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). The objective component of this prong "is somewhat fact intensive." *Mendoza*, 195 F.3d at 1246. In that regard, adjudicating fact-specific sexual harassment cases often leaves federal courts in the unfortunate position of "decid[ing] what is 'sufficiently severe' by resorting to 'crudity comparables.' " *Breda v. Wolf Camera, Inc.*, 148 F. Supp. 2d 1371, 1376 (S.D. Ga. 2001). That is, judges must compare the

24

crudity and 'lewdity' found in one case with that deemed sufficient to survive a Rule 50 or 56 motion in another." *Id.*

To determine whether conduct is objectively severe or pervasive, courts typically consider factors including: (i) the frequency of the conduct; (ii) the severity of the conduct; (iii) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether the conduct unreasonably interferes with the employee's job performance. *Miller*, 277 F.3d at 1276.   These four factors are used to "delineate a minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII." *Mendoza*, 195 F.3d at 1246.  The inquiries serve to ensure that Title VII does not become "a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

In her complaint, Plaintiff alleges that the following conduct gave rise to her claims for sexual harassment and constructive discharge:  Necco and Carpenter asked female employees about their sex lives and made comments about female employees' body parts, [Doc. 1 ¶¶ 32, 33]; Necco's speech was "replete with profanity during business meetings, conferences, teleconferences, and training sessions," [*id*. ¶ 34]; Carpenter used profanity in e-mail to staff "on a routine basis," [*id*. ¶ 36];  on "several"

visits to the Georgia offices, Carpenter asked Plaintiff about her sex life and whether she was "getting enough" lately, [*id*. ¶ 45]; in November 2012, Carpenter kissed Plaintiff on the cheek and hugged her so hard that he picked her up off the floor, [*id*. ¶¶ 46, 47]; at the 2012 Christmas party, Necco propositioned Plaintiff for sex, told her she looked young and beautiful, told her that her lips were sexy, invaded Plaintiff's personal space several times, and told another employee that they were "going to fuck like rabbits," [*id*. ¶ 42]; and ENA management "routinely" used profanity and made inappropriate comments about nonbusiness matters in e-mail, [*id*. ¶ 35].

Defendants argue that the complaint fails to state a plausible claim for relief because it does not allege facts sufficient to enable a reasonable finder of fact to conclude that the complained-of conduct meets the "severe or pervasive" standard. [Doc. 5 at 5-11]. They contend that while the alleged conduct may have been inappropriate, there has been no showing that it was objectively severe or pervasive because there are no allegations that would allow a reasonable fact finder to determine that the conduct occurred frequently or regularly; was sufficiently severe; embarrassed or humiliated Plaintiff; or affected her work performance. [*Id*. at 7]. Defendants then go on to compare Plaintiff's allegations to cases that failed as a matter of law in this circuit for inability to meet the severe or pervasive standard. [*Id*. at 8-10 (citing

26

*Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803 (11th Cir. Feb. 3, 2012); *Mitchell v. Pope*, 189 Fed. Appx. 911 (11th Cir. July 14, 2006); *Howard v. City of Robertsdale*, 168 Fed. Appx. 883 (11th Cir. Feb. 9, 2006); *Demmons v. Fulton Cnty.*, Civ. Action File No. 1:09-cv-2312-TWT-WEJ, 2010 U.S. Dist. LEXIS 90829 (N.D. Ga. Aug. 2, 2010); *Jones v. Guardsmark, LLC*, Civ. Action 05-0458-WS-C, 2006 U.S. Dist. LEXIS 62767 (S.D. Ala. Aug. 31 2006))].  Finally, Defendants suggest that because Necco and Carpenter were based in Ohio and Plaintiff was based in Georgia, it was unlikely that Plaintiff would feel threatened or humiliated to come to work or that any alleged conduct would affect her work performance.  [*Id.* at 10 [citing Doc. 1 ¶¶ 17, 19, 21, 25]].

In response, Plaintiff argues that her allegations "are not conclusory, are very specific[,] and documents and testimony of several witnesses will provide additional facts to support these allegations during the discovery process."  [Doc. 12 at 4].  She further contends that Necco's and Carpenter's high rank within the company and the fact that more than one supervisor engaged in the conduct contributed to the severity and pervasiveness of the conduct, [*id.* at 5-7, 9 (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 221 (4th Cir. 2011); *U.S. Equal Emp't Opportunity Comm'n v. Robert L. Reeves & Assocs.*, 68 Fed. Appx. 830, 832 (9th Cir. June 20, 2003); *Hare v. H & R*

27

*Indus.*, 67 Fed. Appx. 114, 117 (3d Cir. May 22, 2003); *Homesley v. Freightliner Corp.*, 61 Fed. Appx 105, 112-13 (4ᵗʰ Cir. Apr. 22, 2003); *Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 904 (7ᵗʰ Cir. 2000))]; that the physical contact also contributed to the severity of the harassment, [Doc. 5 at 7-8 (citing EEOC, Policy Guidance on Sexual Harassment, 8 BNA FEP Manual 405:6689-90 (Mar. 1990) (hereinafter, "EEOC Guidance"); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001))]; and that sexual harassment she observed being inflicted on others further established that the work environment was hostile, [Doc. 5 at 10-11 (citing *U.S. Equal Emp't Opportunity Comm'n v. Gurnee Inn Corp.*, Nos. 87 C 0888, 87 C 0889, 1988 WL 129327, at *9 (N.D. Ill. Nov. 28, 1988))].  She further avers that "[a]lthough the propositions and physical contact w[ere] not routine, the questions regarding her sex life by [Carpenter] were made routinely when [he] visited the Macon office several times a year"; that Necco's and Carpenter's conduct "was so pervasive that it was inculcated in the company culture"; that "women employees felt they were powerless to correct the situation"; that Necco's and Carpenter's visits were frequent enough to cause her to feel threatened; that she was routinely exposed to "nasty, profane, and offensive language" in e-mail received from officers, in videoconferences, and in dinner meetings; and that the small size of the Macon office (thirty-two employees)

28

"magnified" the harassment. [Doc. 12 at 5-7, 10-12]. Finally, Plaintiff argues that "the fact that the harassment did not interfere with [her] work performance is not proof that the environment was not hostile as no one factor is required to prove sexual harassment." [*Id*. at 12-13 (citing *Harris*, 510 U.S. at 22)].

Plaintiff is correct that where conduct is sufficiently severe, even isolated incidents may create an objectively hostile work environment, and that where the challenged conduct is that of a supervisor, it is more likely that the conduct will be objectively severe. *Bryant v. Jones*, 464 F. Supp. 2d 1273, 1301 (N.D. Ga. 2006) (Duffey, J.), *reversed, in part, on other grounds*, 575 F.3d 1281 (11th Cir. 2009) ("When the conduct in question is that of a supervisor, even isolated instances may more clearly rise to the level of actionable harassment."); *see also Equal Emp't Opportunity Comm'n v. Nunez*, Civ. Action File No. 1:09-cv-2661-WSD-AJB (N.D. Ga. Feb. 28, 2011), ECF No. 39 at 47 (Baverman, M.J.), *adopted* on Mar. 14, 2011, at ECF No. 43 (Duffey, J) (finding harassment actionable despite its sporadic nature). However, the Court must "look[] to the *totality* of the circumstances to determine whether [conduct] is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Mendoza*, 195 F.3d at 1258 (italics added). Here, while the Court certainly appreciates that

29

conduct cited by Plaintiff would have been annoying and inappropriate in a place of business, it nevertheless finds that Plaintiff has not stated facts showing that the conduct at issue was sufficiently severe and pervasive to raise a plausible claim for sexual harassment or constructive discharge.

It first bears noting that Plaintiff cannot succeed in the face of Defendants' Rule 12(b)(6) motion by asserting additional facts or theories in the brief she filed in response to the motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam); *Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (per curiam); *Brown v. J.P. Turner & Co.*, No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (Carnes, J.) (deeming it "plainly inappropriate" to raise allegations for the first time in response to a motion to dismiss). This is particularly true where, as here, Plaintiff is represented by counsel who could have filed a motion to amend the complaint under Rule 15 of the Federal Rules of Civil Procedure. *See Long*, 181 F.3d at 1279 (stating that "[f]iling a motion is the proper method to request leave to amend a complaint"). Likewise, a plaintiff cannot rely on discovery to provide additional facts to support generalized allegations. *Phillips v. City of Atlanta*, Civ. Action File No. 1:15-CV-3616-TWT-RGV, 2016 WL 5429668, at *9 n.21 (N.D. Ga. July 29, 2016) (Vineyard, M.J.), *adopted* at

30

2016 WL 5394116 (N.D. Ga. Sept. 26, 2016) (Thrash, J.) (holding that the plaintiff's allegation regarding other unidentified white employees "to be named during the course of this action" was "conclusory and devoid of sufficient factual enhancement" to suggest a plausible claim and pointing out that "discovery is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that she has filed has any basis in fact") (punctuation omitted).  Nor can a plaintiff support her own claims of harassment on incidents she did not witness herself.  *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) (holding that claims of racial harassment could not be supported with evidence of incidents of harassment the plaintiff did not experience firsthand).  Thus, the only facts relevant to the issue of whether Plaintiff has stated a plausible claim for relief are the facts asserted in the complaint, and the Court will limit its analysis accordingly.

Second, many of the allegations that do appear in the complaint are themselves overly conclusory:  while Plaintiff may certainly have found Necco's language to be "replete" with profanity during business meetings, conferences, teleconferences, and training sessions and ENA management's use of profanity and "inappropriate comments" in e-mail to be "routine," she has supplied the Court with no basis upon which to determine that her characterization of the frequency was objectively

31

reasonable and therefore potentially actionable, [*see* Doc. 1 ¶¶ 34-36]. *See Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188 (providing that a court should not accept conclusory allegations when adjudicating a motion to dismiss for failure to state a plausible claim for relief); *see also Smith v. City of Sumiton*, No. 6:12-cv-03521-RDP, 2013 WL 3357573, at *4 (N.D. Ala. July 2, 2013) (finding sexual harassment claim insufficiently pleaded where Plaintiff had not pointed to specific facts, dates, or number and frequency of incidents). Similarly, while Plaintiff states that Carpenter made "inappropriate comments" to Plaintiff "[o]n several occasions," there is no indication how many times Carpenter made such comments over the course of Plaintiff's four years with ENA, [*see id.* ¶ 45]. *See Oxford Asset Mgmt., Ltd.*, *id.*; *City of Sumiton*, *id.* The complaint also contains no grounds for a determination that Necco's profane language, ENA management's profane language, or ENA's inappropriate comments were sexual or related to gender, [*see id.* ¶¶ 34-36], and thus germane to Plaintiff's claims of sexual harassment. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000)[12] (providing that courts consider only "the statements and conduct . . . of a sexual or gender-related nature—'sexual advances, requests for sexual

---

[12] *Gupta* was overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). *Byrd v. Postmaster Gen.*, 582 Fed. Appx. 787, 790 (11th Cir. Sept. 3, 2014).

AO 72A
(Rev.8/8
2)

favors, or conduct of a sexual nature' " and that "[i]nnocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or the offended party . . . are not counted") (quoting *Mendoza*, 195 F.3d at 1242) (punctuation omitted)).   Notably, Plaintiff also admits that "the propositions and physical contact w[ere] not routine" and Carpenter's questions regarding her sex life occurred, at most, "several times a year." [*See* Doc. 12 at 5-6].

Third, the accused conduct cannot be deemed "severe," as opposed to merely offensive or boorish.   While the fact that Plaintiff admits that the accused conduct did not affect her ability to do her work may not be dispositive as to her claim for sexual harassment, it certainly cuts against a determination that the conduct was severe and pervasive.   [*See* Doc. 5 at 12-13].   Additionally, the only allegations of sex-related conduct appearing in the complaint are inappropriate and oafish:  Plaintiff's allegations that Carpenter made inappropriate comments to her "[o]n several occasions," giving the example of Carpenter having asked her about her sex life and whether she was "getting enough lately,"  [Doc. 1 ¶ 45]; that Carpenter on one occasion kissed her on the cheek and hugged her hard enough to pick her up off the floor, [*id*. ¶¶ 46-47]; and that on one occasion, Necco complimented her appearance, solicited her for sex, and told her coworker "we are going to fuck like rabbits, [*id*. ¶¶ 38-42].  As Defendants point out,

33

these allegations are remarkably less severe and pervasive than the cases Plaintiff seeks to analogize. *See Okoli*, 648 F.3d at 220 (genuine issue of material fact based on evidence that the supervisor forcibly kissed the plaintiff, fondled her leg, propositioned her for sex, asked sexually explicit questions, and described sexual activities he wished to perform); *Robert L. Reeves & Assocs.*, 68 Fed. Appx. at 832 (summary judgment precluded in a class action involving alleged sexual harassment against twelve female employees that involved sexual jokes, comments, leering, and offensive touching); *Hare*, 67 Fed. Appx. at 117 (affirming district court's ruling in favor of the plaintiff after a bench trial where evidence showed that, among other things, the plaintiff's general manager would put his arm around her, squeeze her cheeks and call her "gorgeous"; a department inspector would approach her with his hands open as if to grab her breasts and would tickle her when she worked on her machine, once causing her almost to cut off a finger; a co-worker would chase the plaintiff around the machines and grab her buttocks, told her he would bend her over a railing in the office, told her the two would eventually sleep together, and would call her "Blondie"; another co-worker spent a lot of time around her machine, would put his arms around her, and would ask her if she was bisexual or had a boyfriend; another co-worker put a note on the plaintiff's desk telling her she would be worth a couple thousand dollars on the

Russian market; and a drawing of a naked woman who was supposed to be the plaintiff was passed around the office); *Homesley*, 61 Fed. Appx at 112-13 (jury verdict supported by evidence that supervisor made references to performing oral sex on the plaintiff; repeatedly rubbed the plaintiff on her breast, at least once in front of two other workers; told her when she complained that he was her boss and could do as he liked; "got right up on her" once when she was bending over a piece of machinery and said "at least I've caught you in the right position"); *Quantock*, 312 F.3d at 904 (genuine issue of material fact based on evidence that supervisor propositioned the plaintiff for sex three times, forcibly kissed her, and grabbed her breasts, and she was then transferred to a position with lesser job responsibilities). "[O]ffhand comments . . . and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Unless it is a case of "quid pro quo"—a situation not implicated here—to qualify as "extremely serious" within the context of a sexual harassment claim, an isolated incident must involve at least "intentional touching of the charging party's intimate body areas." EEOC Guidance at 405:6690[13]; *Ferris*,

---

[13] The deference given EEOC Guidance is "respect proportional to its power to persuade." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2461 (2012).

AO 72A
(Rev.8/8
2)

277 F.3d at 136 (holding that a single incident of rape was sufficiently egregious to establish a hostile environment). Additionally, in published cases involving allegations of offensive conduct of similar severity and frequency, the Eleventh Circuit Court of Appeals have found such pleadings insufficient to constitute an actionable claim of sexual harassment. *See, e.g., Gupta*, 212 F.3d at 585 (no hostile work environment where senior faculty member, among other things, complimented the plaintiff, looked at her in a way that made her uncomfortable, called her frequently at home, asked her about her boyfriend, suggested spending the night with her once, placed his hand on the plaintiff's knee once, and touched the hem of her dress once) (favorably citing *Minor v. Ivy Tech State Coll.*, 174 F.3d 855, 857 (7th Cir. 1999) (no hostile work environment where supervisor, among other things, on one occasion, "put his arms around [the plaintiff], kissed her, squeezed her, and said, 'Now, is this sexual harassment?' ")); *Mendoza*, 195 F.3d at 1247 (no hostile work environment where offender once said to the plaintiff "I'm getting fired up"; once rubbed his hip against the plaintiff's hip while touching her shoulder and smiling; twice made a sniffing sound while looking at her groin area and once sniffed without looking at her groin; "constantly" followed her; and stared at her in a "very obvious fashion"). Thus, the Court concludes that while Necco's and Carpenter's accused conduct certainly may have properly been deemed

36

inappropriate, there has been no showing that it was as "severe" or "pervasive" as required under prevailing case law.

In sum, Plaintiff's allegations do not supply a sufficient basis for a finding that Defendant's conduct was frequent, severe, physically threatening or humiliating, or unreasonably interfered with Plaintiff's job performance, and that her subjective perception of sexual harassment was therefore objectively reasonable.  As a consequence, the undersigned finds that Plaintiff has failed to plead facts sufficient to establish a plausible claim to relief for harassment or hostile work environment pursuant to Title VII.  The undersigned therefore **RECOMMENDS** that the District Judge **GRANT** Defendants' motion to dismiss those claims.

### D.    Constructive Discharge

Defendants also move for dismissal of Plaintiff's constructive discharge claim. [Doc. 5 at 11].  In order to establish a claim for constructive discharge, a plaintiff must "demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.' "  *Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (quoting *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)); *see also Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (explaining that for a constructive discharge to be

37

AO 72A
(Rev.8/8
2)

shown, there must be a "high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable' ").

" 'Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.' " *Palmer v. McDonald*, 624 Fed. Appx. 699, 704 (11th Cir. Aug. 21, 2015) (per curiam) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009)). Because the Court has already found in the analysis set forth above that Plaintiff's allegations of offending conduct were insufficient to establish a plausible claim of harassment or hostile working environment, it therefore follows that Plaintiff cannot, as a matter of law, meet the higher standard required to establish a constructive-discharge claim.

Accordingly, the undersigned **RECOMMENDS** to the District Judge that he also **GRANT** Defendants' motion to dismiss Plaintiff's constructive-discharge claim.

## IV. Conclusion

For the reasons set forth above, the undersigned **RECOMMENDS** that District Judge **GRANT** Defendants' motion to dismiss, [Doc. 5], and **DISMISS** the complaint in its entirety.

The Clerk is **DIRECTED** to **TERMINATE REFERENCE** to the undersigned Magistrate Judge.

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED AND DIRECTED**, this 9th day of November, 2016.

_____

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)