IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATRICIA L. OGLETREE,

          Plaintiff,

    v.

EDWARD "BEAU" NECCO, BOB
CARPENTER, ENA d/b/a NECCO,
and CARVAKA, INC.,

          Defendants.

1:16-cv-1858-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [14] ("R&R").  The R&R recommends the

Court grant Defendants Edward "Beau" Necco ("Necco"), Bob Carpenter

("Carpenter"), ENA d/b/a NECCO ("ENA"), and Carvaka, Inc.'s ("Carvaka")

(collectively, "Defendants") Motion to Dismiss [5].

## I.   BACKGROUND

### A.   Facts and Procedural History[1]

On or about July 27, 2009, Plaintiff Patricia Ogletree was hired by ENA as an Administrative Assistant and Georgia Billing Specialist in Macon, Georgia. ([1] ¶ 25).  ENA is a not-for-profit company that provides therapeutic foster care, independent living, intensive home-based treatment, mental-health treatment, community living, and alternatives to secure detention.  (Id. ¶ 7).  Carvaka is a for-profit entity that provides management and administrative services, human-resource services, and technology and consulting services to ENA.  (Id. ¶¶ 11, 13).  During the time period relevant to this lawsuit, Necco was ENA's Chief Executive Officer, and Carpenter was ENA's Chief Operating Officer.  Both Necco and Carpenter were based in Ohio.  (Id. ¶¶ 15, 17, 18, 21).  Necco and Carpenter both held significant shares of both ENA and Carvaka.  (Id. ¶¶ 15, 16, 20, 22).

In her job, Plaintiff handled all of the invoice billing for the Department of Family and Children's Services and the Department of Juvenile Justice, and she

---

[1]   The facts are taken from the R&R and the record.  The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them.  The Court thus adopts the facts set out in the R&R.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

had certain communications responsibilities.  (Id. ¶ 5).  She was also required to attend certain after-hours business meetings and dinners, out-of-town "morale boosting" gatherings, and training events where Necco and Carpenter were present. (Id. ¶ 6).

Plaintiff felt that Necco and Carpenter sexually harassed her and subjected her to a hostile work environment.  (Id. ¶¶ 27, 37, 44).  Necco and Carpenter asked female employees about their sex lives and made comments about the female employees' body parts.  (Id. ¶¶ 32-33).  Necco's language was "replete" with profanity during business meetings, conferences, teleconferences, and training sessions.  (Id. ¶ 34).  Carpenter "routinely" used profanity in e-mails to staff.  (Id. ¶ 36).

On several occasions during visits to the Georgia offices, Carpenter made inappropriate comments to Plaintiff, such as asking about her sex life and asking whether she was "getting enough" lately.  (Id. ¶ 45).  In or around November 2012, Carpenter kissed her on the cheek and hugged her so hard that he picked her up off the floor.  (Id. ¶¶ 46-47).

At the 2012 Christmas party, which was held on December 1, 2012, Necco became intoxicated to the point of almost falling down.  (Id. ¶¶ 38-39; [12] at 16; [12.1] ¶ 4).  He told Plaintiff that she looked young and beautiful, told her that her

lips were sexy, commented on her jaw line, and invaded her personal space several times as he made the comments. ([1] ¶¶ 40-41). He also propositioned Plaintiff for sex. (Id. ¶ 38). Plaintiff then heard Necco say to another employee, "We are going to fuck like rabbits." (Id. ¶ 42).

In March 2013, Carpenter participated in an e-mail chain that appears to have been sent to all ENA staff. (Id. ¶ 35). The subject of the e-mail chain was "Poop." (Id.). In the e-mail chain, Carpenter wrote, "One of the funniest things I ever witnessed was sean davis [sic] shitting his pants in the Lexington parking lot." (Id.).

Sometime in May 2013, Plaintiff went to Atlanta to talk to an officer of the Equal Employment Opportunity Commission ("EEOC") about her discomfort with her treatment. ([12.1] ¶ 7). The officer told Plaintiff that Plaintiff would need to notify Necco, Carpenter, and the Human Resources home office ("HR") in writing about the offensive conduct and her discomfort. (Id.). He also told her that it was likely she would be fired within about a week of providing the notice. (Id.).

The advice she received from the EEOC made Plaintiff afraid to file the charge until after she left the company. (Id. ¶ 10). As a result, Plaintiff gave a statement on an intake form, but she did not file a charge that day. (Id. ¶ 9). The

EEOC officer did not tell her that she would lose her right to sue if she did not file

her EEOC charge by a certain date.  (Id. ¶ 10).

On or about June 24, 2013, Plaintiff resigned from her position with ENA.

([1] ¶ 26).  Approximately six months later, she contacted the EEOC to file her

charge of discrimination.  ([12.1] ¶ 11).  On December 13, 2013, the EEOC issued

ENA a Notice of Charge of Discrimination, which stated that Plaintiff was filing a

charge on her own behalf, she was alleging sex discrimination and retaliation, and

a signed copy of the charge would be mailed in approximately forty-five days.

([5.1] at 1).  On August 22, 2014, the EEOC forwarded to ENA a copy of

Plaintiff's charge, which was dated August 8, 2014, and was stamped as having

been received by the EEOC on August 18, 2014.  (Id. at 5).

The charge alleged sex discrimination and retaliation against ENA.  (Id.).

The particulars of the charge were as follows:

> 1.      I was hired by the above named employer on July 27, 2009, as an Administrative Assistant.  During my employment I was subjected to sexual harassment by Bob Carpenter, Chief Operative Officer.  On several occasions he questioned me about my sex life asking if I was, "getting any."  Mr. Necco, Chief Executive Officer, openly discussed degrading and sexualized topics which caused me undue stress and made me feel uncomfortable.  On June 24, 2013 I submitted my resignation letter due to the inability to tolerate language and behavior displayed by senior management.

2.      I believe I was discriminated because of my sex (female) and
        retaliated against for opposing unlawful employment practices, in
        violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.).

On June 7, 2016, Plaintiff, proceeding through counsel, filed her Complaint.

([1]).  She stated that this action is "authorized and instituted pursuant to Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. (hereinafter

'Title VII') to correct unlawful employment practices on the basis of sex

discrimination and to seek appropriate relief to the Plaintiff, Patricia L. Ogletree[,]

who seeks declaratory and injunctive relief, back pay, front pay, and compensatory

damages and redress for intentional infliction of emotional distress."  (Id. ¶ 1).

Plaintiff contends that she was sexually harassed, subjected to a hostile work

environment, and constructively discharged.  (Id. ¶¶ 26, 27, 29).

On June 29, 2016, Defendants filed a motion to dismiss [4].  The following

day, Defendants amended the motion to dismiss to clarify that the motion was filed

on behalf of all four defendants.  ([5]).

B.      The Magistrate Judge's R&R

On November 9, 2016, the Magistrate Judge issued his R&R.  The

Magistrate Judge first found that Plaintiff has abandoned the following claims:

(1) her Title VII claims against Carvaka; (2) her Title VII claims against Necco

and Carpenter in their individual capacities; and (3) any claim for intentional infliction of emotional distress that her Complaint could have been construed to assert. With respect to the remaining official capacity claims against Defendants, the Magistrate Judge noted that claims asserted against Necco or Carpenter in their official capacities are redundant with a claim against ENA, and recommends they be dismissed. The Magistrate Judge determined that Plaintiff's remaining claims are her Title VII claims against ENA for sexual harassment, hostile work environment, and constructive discharge.

The Magistrate Judge next found that Plaintiff failed to show that she timely filed a charge of discrimination or that the deadline should be equitably tolled, including because Plaintiff did not show that: (1) even if she had filed a charge of discrimination on the day she first visited the EEOC, that charge would have been timely; (2) even if her intake questionnaire had been filed within 180 days of the date the last allegedly discriminatory act took place, it would have constituted a charge of discrimination for the purposes of Title VII; and (3) equitable tolling should apply to excuse the out-of-time EEOC charge she filed. Accordingly, the Magistrate Judge recommends the Court grant Defendants' motion to dismiss Plaintiff's Title VII claims for failure to timely file a charge of discrimination.

The Magistrate Judge next found that, even if Plaintiff filed a timely charge of discrimination, her Complaint fails to state a prima facie case of sexual harassment or hostile work environment under Title VII, because the conduct Plaintiff alleges was not sufficiently severe and pervasive to state a plausible claim for sexual harassment or constructive discharge.  Finally, the Magistrate Judge recommends the Court grant Defendants' motion to dismiss Plaintiff's constructive charge claim, which requires a higher showing than that required to state a hostile work environment claim.

Plaintiff did not file any objections to the R&R.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  Where, as here, no party objects to the R&R, the Court conducts a plain error review of the record.  See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

### 2.      Motion to Dismiss Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550

U.S. at 570).

      B.     Analysis

          1.     Abandoned Claims

The Magistrate Judge found that Plaintiff abandoned the following claims:

(1) her Title VII claims against Carvaka; (2) her Title VII claims against Necco

and Carpenter in their individual capacities; and (3) any claim for intentional

infliction of emotional distress that her Complaint could be construed to assert.

Plaintiff concedes that the Title VII claims against Necco and Carpenter, as

individuals, should be dismissed, that the Title VII claims against Carvaka should

be dismissed, and states that she "did not claim intentional infliction of emotional

distress in her Complaint."  ([12] at 1-2, 19-20).

With respect to the remaining official capacity claims against Defendants,

the Magistrate Judge noted that claims asserted against Necco or Carpenter in their

official capacities are redundant with a claim against ENA, and recommends they

be dismissed.  The Court agrees.  See, e.g., Cook v. Randolph Cty., 573 F.3d 1143,

1149 (11th Cir. 2009) (affirming dismissal of official-capacity claims asserted

under 42 U.S.C. § 1983 where "functionally equivalent" claims remained against

the employer).  The Magistrate Judge thus recommends that the Court grant

Defendants' motion to dismiss (i) the Title VII claims asserted against Necco,

Carpenter, and Carvaka, and (ii) any claims for intentional infliction of emotional

distress.  The Magistrate Judge also recommends the Court dismiss Necco,

Carpenter, and Carvaka from this lawsuit.  The Court finds no plain error in these

findings and recommendations.  See Slay, 714 F.2d at 1095.[2]

### 2.     Timeliness of Charge of Discrimination

The Magistrate Judge next determined that Plaintiff failed to show that she

timely filed a charge of discrimination or that the deadline should be equitably

tolled.  To file a judicial complaint under Title VII, a plaintiff first must exhaust

her administrative remedies by filing a "charge" of discrimination with the EEOC

within 180 days of her termination.  See, e.g., H&R Block E. Enters. v. Morris,

606 F.3d 1285, 1295 (11th Cir. 2010) (citing Wilkerson v. Grinnell Corp., 270

---

[2]     The Magistrate Judge also noted that, to the extent Plaintiff's complaint
could be construed as asserting claims under 42 U.S.C. § 1983, the Court should
dismiss those claims because there is nothing in the Complaint to suggest that any
of the Defendants could be considered a "state actor" in the context of Section
1983.  The Court finds no plain error in these findings and recommendations.  See
Slay, 714 F.2d at 1095.

F.3d 1314, 1317 (11th Cir. 2001)) ("Before suing under Title VII, a plaintiff must

first exhaust her administrative remedies.  To do so, a plaintiff must file a timely

charge of discrimination with the EEOC within 180 days of the last discriminatory

act." (citation omitted)).  "[T]he 'scope' of the judicial complaint is limited to the

'scope' of the EEOC investigation which can reasonably be expected to grow out

of the charge of discrimination."  Sanchez v. Standard Brands, Inc., 431 F.2d 455,

466 (5th Cir. 1970).[3]

The Magistrate Judge found that Plaintiff did not show that, even if she had

filed a charge of discrimination on the day she first visited the EEOC, that charge

would have been timely, including because the Complaint does not allege any

sexually-charged conduct taking place after the 2012 Christmas party.  Plaintiff

concedes that this last occurrence took place on December 1, 2012.  ([12] at 16).

The 180-day period for filing her charge of discrimination with the EEOC thus

ended on May 30, 2013.  Though Plaintiff states she visited the EEOC office in

May 2013, Plaintiff does not allege exactly on which of May's thirty-one days

Plaintiff visited the EEOC, and there is no allegation that Plaintiff in fact submitted

---

[3]    In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Eleventh
Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit
handed down prior to the close of business on September 30, 1981.

the form to the EEOC that day.  The Magistrate Judge thus found that Plaintiff has

not met her burden to show that she submitted anything to the EEOC, or even

visited the EEOC, prior to the 180-day deadline.

The Magistrate Judge next found that Plaintiff did not show that, even if her

intake questionnaire had been filed within 180 days of the date the last allegedly

discriminatory act took place, it would have constituted a charge of discrimination

for the purposes of Title VII.  An intake questionnaire may, under certain

circumstances, constitute a charge of discrimination for purpose of the Title VII

statute of limitations.  See Wilkerson, 270 F.3d at 1318-20.  Here, the Magistrate

Judge found that "there is no way to determine whether the intake questionnaire

Plaintiff claims to have completed contained the information required by the

EEOC's regulation[,]" because the questionnaire is not in the record, and Plaintiff

states only that she "provided all the information requested by the regulations she

knew."  (R&R at 19-20 (quoting [12] at 18)).

The Magistrate Judge next found that Plaintiff did not show that equitable

tolling should apply to excuse the out-of-time EEOC charge she filed.  Procedural

requirements attendant to exhaustion are subject to waiver, estoppel, and equitable

tolling.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (holding

that "filing a timely charge of discrimination with the EEOC is not a jurisdictional

prerequisite to suit in federal court, but a requirement that, like a statute of

limitations, is subject to waiver, estoppel, and equitable tolling"); Ross v. Buckeye

Cellulose Corp., 980 F.2d 648, 660 (11th Cir. 1993) (quoting Zipes, 445 U.S. at

393). The Eleventh Circuit has recognized three situations in which the Title VII

limitation periods may be equitably tolled:

> (1) during the pendency of an action against the same parties and
> involving the same cause of action in a state court which had
> jurisdiction over the subject matter of the suit but was the wrong
> forum under state law; (2) when the defendant concealed facts that
> support the plaintiff's cause of action, until such time as the plaintiff
> knew or should have known of these facts; and (3) when the EEOC
> misleads a complainant about the nature of his rights under Title VII.

Jones v. Wynne, 266 F. App'x 903, 906 (11th Cir. Feb. 27, 2008) (citing Chappell

v. Emco Mach. Works Co., 601 F.2d 1295, 1302-03 (5th Cir. 1979)). The

Magistrate Judge noted that Plaintiff alleged the EEOC officer did not inform her

that the filing period was running short or that she needed to file her EEOC charge

by a certain date or she would lose her right to sue. The Magistrate Judge

concluded, however, that there is no authority establishing that an EEOC officer

must inform a potential claimant of administrative deadlines, and that Plaintiff

does not allege the EEOC officer affirmatively misstated the deadline, led her to

believe there was no deadline, or in any other way may have dissuaded Plaintiff

from performing her own due diligence. The Magistrate Judge found Plaintiff

failed to show any extraordinary circumstances that might justify equitable tolling.

Accordingly, the Magistrate Judge recommends the Court grant Defendants'

motion to dismiss Plaintiff's Title VII claims for failure to timely file a charge of

discrimination.  The Court finds no plain error in these findings and

recommendations.  See Slay, 714 F.2d at 1095.

> 3.      Prima Facie Case of Sexual Harassment and Hostile Work
>         Environment

To establish a prima facie case of hostile work environment or harassment

under Title VII, a plaintiff must show:  (1) she belongs to a protected group;

(2) she was subjected to unwelcome harassment; (3) the harassment was based

upon her sex; (4) the harassment was sufficiently severe or pervasive to alter the

terms and conditions of employment and to create a discriminatorily abusive

working environment; and (5) the defendant is responsible for such environment

under either a theory of vicarious or of direct liability.  See Walton v. Johnson &

Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003); Miller v. Kenworth

of Dothan Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Orquiola v. Nat'l City

Mortg. Co., 510 F. Supp. 2d 1134, 1149 (N.D. Ga. 2007).

The Magistrate Judge found that, even if Plaintiff filed a timely charge of

discrimination, her Complaint fails to state a prima facie case of sexual harassment

or hostile work environment under Title VII, because the conduct Plaintiff alleges

15

was not sufficiently severe and pervasive to raise a plausible claim for sexual harassment or constructive discharge.

To establish that conduct is sufficiently severe or pervasive to alter the terms and conditions of employment, the plaintiff must establish both subjective and objective components.  Miller, 277 F.3d at 1276.  The subjective component is met when "the complaining employee perceived [the conduct] to be [severe or pervasive] at the time" of the harassment.  Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004).  In evaluating the objective component, a court examines whether the actions of the employer altered the employee's working conditions to such an extent that a reasonable person would find the atmosphere hostile and abusive.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23 (1993).  The objective component of this prong "is somewhat fact intensive."  Mendoza v. Borden, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).  In that regard, adjudicating fact-specific sexual harassment cases often leaves federal courts in the unfortunate position of "decid(Ing] what is 'sufficiently severe' by resorting to 'crudity comparables.'"  Breda v. Wolf Camera, Inc., 148 F. Supp. 2d 1371, 1376 (S.D. Ga. 2001).  That is, judges must compare the crudity and 'lewdity' found in one case with that deemed sufficient to survive a Rule 50 or 56 motion in another."  Id.

To determine whether conduct is objectively severe or pervasive, courts typically consider factors including:  (i) the frequency of the conduct; (ii) the severity of the conduct; (iii) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether the conduct unreasonably interferes with the employee's job performance.  Miller, 277 F.3d at 1276.  These four factors are used to "delineate a minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII."  Mendoza, 195 F.3d at 1246.  The inquiries serve to ensure that Title VII does not become "a general civility code."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998).

The Magistrate Judge found that, while the conduct alleged was inappropriate, Plaintiff does not allege facts showing sufficiently severe and pervasive conduct to state a plausible claim of sexual harassment.  (R&R at 30).[4] The Magistrate Judge found that many of Plaintiff's allegations, such as her allegations that Defendants' uses of inappropriate comments in e-mail were "routine," are conclusory, and she failed to allege sufficient facts for the Court to

---

[4]    The Magistrate Judge noted that Plaintiff cannot assert additional facts or theories in response to a motion to dismiss.  The Court agrees . See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam).

determine whether her characterization of the frequency was objectively reasonable and therefore actionable.  (Id. at 31-32).  The Court agrees.  See, Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (a court should not accept conclusory allegations when adjudicating a motion to dismiss). The Magistrate Judge also noted that the Complaint did not contain sufficient information to determine whether Necco's alleged profane language, ENA management's alleged profane language, or ENA's alleged inappropriate comments were sexual or related to gender.  (R&R at 32).  The Magistrate Judge found the alleged conduct also was "remarkably less severe and pervasive than the cases Plaintiff seeks to analogize."  (Id. at 34 (comparing cases)).  Accordingly, the Magistrate Judge recommends that the Court grant Defendants' motion to dismiss Plaintiff's Title VII harassment and hostile work environment claims.  The Court finds no plain error in these findings and recommendations.  See Slay, 714 F.2d at 1095.

4.    Constructive Discharge

"'Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.'"  Palmer v. McDonald, 624 F. App'x 699, 704 (11th Cir. Aug. 21, 2015) (per curiam) (quoting Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009)).  Because Plaintiff failed to

state a claim of harassment or hostile work environment, the Magistrate Judge

found Plaintiff cannot, as a matter of law, meet the higher standard required to

state a constructive-discharge claim.  The Magistrate Judge thus recommends the

Court grant Defendants' motion to dismiss Plaintiff's constructive-discharge claim.

The Court finds no plain error in these findings and recommendations.  See Slay,

714 F.2d at 1095.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [14] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants Edward "Beau" Necco, Bob

Carpenter, ENA d/b/a NECCO, and Carvaka, Inc.'s Motion to Dismiss [5] is

**GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.


**SO ORDERED** this 30th day of November, 2016.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE


19